UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IN RE CONNIE'S TRADING CORP., et al.,   :

          Debtors.       : 14 Civ. 376 (LAK) (GWG)
                                   REPORT AND RECOMMENDATION
                                   :
---------------------------------------------------------------X
JOHN S. PEREIRA, AS CHAPTER 7 TRUSTEE   :
OF CONNIE'S TRADING CORP.,

                                     :

          Plaintiff,     : Adv. Proc. No. 12-01729 in Chap. 7 Case
    -v-                           No. 12-11280
                                     :

DOMINIC GARRITANO and NYRE         :
NINTH LLC,
          Defendants.      :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Johanna Paz, Mireya Jaramillo, Jennifer Alvarez, and Alejandro Arteago (the "Movants")

seek an order pursuant to 28 U.S.C. § 157(d) and (e) withdrawing from the bankruptcy court two

motions pending in an adversary proceeding entitled Pereira v. Garritano, Adv. Proc. No. 12-

01729, in the case of In Re Connie's Trading Corp., Chap. 7 Case No. 12-11280 (Bankr.

S.D.N.Y.).

     The two motions they seek to withdraw are (1) a motion brought by John S. Pereira, the

Chapter 7 Trustee of debtor Connie's Trading Corp., ("Connie's") to settle the adversary

proceeding pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (2) the

Movants' motion to intervene in the adversary proceeding.  The Movants are plaintiffs in two

employment lawsuits pending in this District who have filed proofs of claim, as creditors,

against the debtor's estate.

The Trustee, John S. Pereira, as well as the defendants in the adversary proceeding, Dominic Garritano and his assignee, NYRE Ninth LLC, oppose this motion. For the reasons that follow, the motion to withdraw the reference to the bankruptcy court should be denied.

## I. BACKGROUND

The Movants are former employees of three New York City restaurants and are plaintiffs in two pending lawsuits in this District. One lawsuit seeks recovery for gender discrimination. See Paz v. Piedra, No. 10 Civ. 1639 (S.D.N.Y. filed March 1, 2010) (the "Discrimination Action"). The other is an action for unpaid wages and other relief under the Fair Labor Standards Act and equivalent state law. See Paz v. Piedra, No. 09 Civ. 3977 (S.D.N.Y. filed April 21, 2009) (the "Wage Action"). The plaintiffs in both actions assert claims against Ignacio and Leonor Piedra and certain corporations owned by the Piedras, who are alleged to operate three restaurants in New York City. Connie's Trading Corp., the debtor in the bankruptcy proceeding, is not a defendant in either of those actions. On March 16, 2012, Judge Lewis A. Kaplan issued a pre-judgment order of attachment in the Discrimination Action and the Wage Action in the amount of $3 million which attached, among other assets, "[t]he interests of any of the defendants [consisting of the Piedras and the corporate defendants] in shares of the stock and the assets of . . . Connie's Trading Corp." See Order of Attachment, dated March 16, 2012 (Docket # 33 in 10 Civ. 1639 and Docket # 164 in 09 Civ. 3977). Shortly thereafter, Connie's filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. See Voluntary Petition, filed March 29, 2012 (Docket # 1 in Bankruptcy Case 12-11280).

The relationship between Connie's and the defendants in the employment actions is set forth in the opposition papers of Garritano and does not appear to be disputed by any party.

2

Connie's was organized by Garritano in 1968 as a single-asset real estate holding company for a piece of real property in New York City, and its sole purpose for many years was to operate that property and to lease space to various tenants.  See Defendant Dominic Garritano's Opposition to Johanna Paz's, et al's Motion to Withdraw the Reference of the Adversary Proceeding, filed Jan. 31, 2014 (Docket # 8) ("Garritano Br."), at 3.[1]  One such tenant was Villa Gari, a corporation formed by Garritano for the purpose of operating Ralph's Italian Restaurant.  Id.  In or about 1995, brothers Albert and Ignacio Piedra began leasing Ralph's from Garritano, and Villa Garri ceased operations.  Id. at 4.  In or about 2008, Garritano decided to sell Connie's to Ignacio and Leonor Piedra for a purchase price of $4,100,000.  Id. at 4-5.  It appears the transaction was not consummated until 2009.  Of that purchase price, $1,100,000 was to be paid to Garritano by the Piedras through the transfer of a home in New Jersey by the Piedras to Garritano.  Id. at 5.  The balance of the purchase price was to be paid pursuant to a note secured by a mortgage against the real property owned by Connie's.  Id.  It is undisputed that the note was later assigned to NYRE Ninth LLC ("NYRE Ninth").[2]

On June 22, 2012, John S. Pereira, as Chapter 7 Trustee of Connie's Trading Corp. (the "trustee"), commenced an adversary proceeding against Garritano and NYRE Ninth.  See Complaint, filed June 22, 2012 (Docket # 1 in Bankruptcy Case 12-01729).  The complaint sought to "avoid and recover all voidable transfers to the Defendants [Garritano and NYRE

---

[1]  Unless stated otherwise, all citations to a docket number refer to 14 Civ. 376.

[2]  See NYRE Ninth LLC's Response to Order to Show Cause and Objection to the Memorandum of Law of the Plaintiff Creditors in Support of Motion to Withdraw the Adversary Proceeding from the Reference to the Bankruptcy Court and in Opposition to the Motion of the Chapter 7 Trustee Pursuant to Bankruptcy Rule 9019 to Settle Plaintiff Creditors' Claims Without their Consent, filed Jan. 31, 2014 (Docket # 9) ("NYRE Br."), at 8.

Ninth] by the Debtor . . . . " Id. ¶ 1. The complaint alleged that on August 14, 2009, Garritano, the sole shareholder and principal of Connie's, sold his interest in Connie's to the Piedras for $4,100,000 million. Id. ¶¶ 16-17. It further alleged that "[d]espite the fact that it was the Piedras, not Connie's, that purchased Garritano's interest in Connie's, the remainder of the purchase price was secured by a purported mortgage of $3,000,000 . . . on the Premises given to Garritano by Connie's." Id. ¶ 18. Additionally, it alleged that Connie's gave Garritano an assignment of rent and leases on the premises and that Connie's made payments to Garritano in the amount of $196,680.22. Id. ¶¶ 19-20. After the filing of the Chapter 7 petition by Connie's, Garritano assigned the mortgage to NYRE Ninth. Id. ¶ 21. According to the complaint, the "transfers by Connie's . . . or the value thereof, are recoverable from Defendants pursuant to § 550 of the Bankruptcy Code," id. ¶ 22, because Connie's made fraudulent transfers to Garritano consisting of the mortgage, the rent and lease assignment, and the payments referenced above, id. ¶ 24. In other words, the trustee sought to avoid the mortgage and recover all amounts transferred from Connie's to Garritano as fraudulent transfers and to avoid and recover the transfers to NYRE Ninth as a subsequent transferee.

The trustee filed a motion for summary judgment in the adversary proceeding against Garritano and NYRE Ninth on February 25, 2013. See Chapter 7 Trustee's Motion for an Order Granting Summary Judgment, filed Feb. 25, 2013 (Docket # 9 in Bankruptcy Case 12-01729). The bankruptcy court held a hearing on the motion on April 11, 2013, and took the motion under advisement. See Transcript of Proceedings, held April 11, 2013 (Docket # 26 in Bankruptcy Case 12-01729 and Docket # 114 in Bankruptcy Case 12-11280). As explained during oral argument on the motion, the trustee's position was that before the transaction in which the property owned by Connie's was transferred to the Piedras, Connie's "owned the building free

4

and clear" and after the transaction, Connie's "owned the building, subject to a three-million-dollar mortgage . . . [f]or which they received no consideration." See Transcript of Proceedings, held April 11, 2013 (Docket # 114 in Bankruptcy Case 12-11280), at 9.  For the trustee, this amounted to a fraudulent conveyance — a position that Judge Shelley Chapman appeared to question during the oral argument largely on the ground that Connie's had no creditors at the time of the transfer.  See id. at 9-13.

On November 4, 2013, the plaintiffs in the Discrimination Action and the Wage Action filed a motion in the adversary proceeding asking the Court to "grant[] the Plaintiffs leave, standing, and authority to prosecute and, if appropriate, settle certain third-party claims and causes of action belonging to the Plaintiffs."  See Notice of Motion of the Wage and Hour Class Plaintiffs and Discrimination Action Plaintiffs For an Order: 1) Joining them as Parties; 2) Permitting them to Intervene, and 3) Authorizing them to Prosecute Claims and Other Causes of Action, filed Nov. 4, 2013 (Docket # 27 in Bankruptcy Case 12-01729).   It is undisputed that the plaintiffs in the Discrimination Action and the Wage Action filed proofs of claim against Connie's estate in the bankruptcy court, though it is unclear from the record when this occurred.

On December 31, 2013, the trustee filed a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of a settlement reached between the trustee and NYRE Ninth.  See Notice of Chapter 7 Trustee's Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Between the Trustee and NYRE Ninth LLC, filed Dec. 31, 2013 (Docket # 30-1 in Bankruptcy Case 12-01729).  On January 21, 2014, the plaintiffs in the Discrimination and Wage Actions filed the instant motion to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and (e) and Rule 5011 of the Federal Rules

of Bankruptcy Procedure, which was brought by order to show cause.[3]  More specifically, the

motion seeks withdrawal of the adversary proceeding with respect to the pending motion for

intervention and the trustee's motion under Bankruptcy Rule 9019.  OSC at 2.

A hearing on the trustee's Rule 9019 motion had been scheduled for January 23, 2014,

but the hearing was adjourned sine die in light of the filing of the order to show cause.  See

Notice of Cancellation of Hearing, filed Jan. 22, 2013 (Docket # 42 in Bankruptcy Case 12-

01729).  Although the order to show cause did not stay the hearing on the intervention motion,

this motion too was adjourned sine die pending the resolution of this motion to withdraw the

reference.  Id.  After the Movants brought the order to show cause, Garritano, NYRE Ninth, and

the trustee all filed opposition papers, the Movants filed a reply, and NYRE Ninth filed a sur-

reply.[4]

II. DISCUSSION

United States District Courts have original jurisdiction over bankruptcy cases and all

civil proceedings "arising under" or "related to" cases under Title 11.  28 U.S.C. § 1334; accord

---

[3]  See Order to Show Cause to Withdraw the Reference, filed Jan. 21, 2014 (Docket # 3) ("OSC"); Memorandum of Law of the Plaintiff Creditors in Support of Motion to Withdraw the Adversary Proceeding from the Reference to the Bankruptcy Court and in Opposition to the Motion of the Chapter 7 Trustee Pursuant to Bankruptcy Rule 9019 to Settle Plaintiff Creditors' Claims Without their Consent, filed Jan. 21, 2014 (Docket # 1) ("Movant Br."); Declaration of Kerry E. Connolly, Esq., annexed as Ex. 1 to Movant Br. ("Connolly Decl.").

[4]  Chapter 7 Trustee's Response to Order to Show Cause to Withdraw the Trustee's Rule 9019 Motion and the Motion to Intervene from the Reference to the Bankruptcy Court, filed Jan. 31, 2014 (Docket # 6); Garritano Br.; NYRE Br.; Plaintiff-Creditors' Reply Memorandum of Law in Further Support of Motion to Withdraw the Reference of the Adversary Proceeding to the District Court, filed Feb. 8, 2014 (Docket # 14) ("Movant Reply"); NYRE Ninth LLC's Sur Reply Regarding Response to Order to Show Cause and Objection to Motion to Withdraw the Adversary Proceeding from the Reference to the Bankruptcy Court, filed Feb. 14, 2014 (Docket # 16).

Nisselson v. Salim (In re Big Apple Volkswagon, LLC), 2013 WL 1245548, at *2 (S.D.N.Y.

March 25, 2013).  This District has a standing order in place that provides for automatic referral

of bankruptcy cases to the bankruptcy court.  See In re Standing Order of Reference Re: Title 11,

12 Misc. 32 (S.D.N.Y. Feb. 1, 2012).  28 U.S.C. § 157(d), however, provides for both mandatory

withdrawal of a proceeding referred to the bankruptcy court as well as permissive withdrawal of

the reference "for cause."  That provision states:

> The district court may withdraw, in whole or in part, any case or proceeding
> referred under this section, on its own motion or on timely motion of any party,
> for cause shown.  The district court shall, on timely motion of a party, so
> withdraw a proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The Movants argue that withdrawal of the reference is warranted under both the

mandatory and "for cause" clauses of § 157(d) — the latter being commonly referred to as

"permissive" withdrawal.  We next address these arguments.[5]

A.  Mandatory Withdrawal

The Second Circuit construes the mandatory withdrawal provision "narrowly" and has

held that "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever

---

[5]  In addition to arguing against mandatory and permissive withdrawal, NYRE Ninth argues that the Movants lack "standing" to bring the withdrawal motion because they are non-parties to the adversary proceeding and that the motion must be denied on this basis.  See NYRE Br. at 11-14.  NYRE Ninth also argues that the motion to withdraw the reference should be denied as untimely.  See id. at 14-16.  Strangely, the Movants failed to address either of these arguments in their reply memorandum of law.  Nonetheless, because the withdrawal motion should be denied on the merits, we need not resolve NYRE Ninth's standing or timeliness arguments.  Notably, NYRE Ninth does not contend that either of these requirements is jurisdictional, and the Court's own review of these principles indicates that they do not implicate subject matter jurisdiction.

non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." Shugrue v. Airline Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990) (citations omitted). More specifically, "[t]his mandatory withdrawal provision has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991) (citations omitted); accord In re Bd. of Dirs. of Telecom Arg. S.A., 2005 WL 3098934, at *2 (S.D.N.Y. Nov. 18, 2005) ("Withdrawal of the reference is appropriate where the case would require the bankruptcy court to engage itself in the intricacies of non-Bankruptcy law, as opposed to routine application of that law.") (citations omitted), aff'd, 528 F.3d 162 (2d Cir. 2008).  Mandatory withdrawal is inappropriate, therefore, when the case would require only the "straightforward application of a federal statute to a particular set of facts." In re Enron Corp., 388 B.R. 131, 136 (S.D.N.Y. 2008) (citation omitted).  Case law also holds that the "bare contention" that "non-bankruptcy law is dispositive or in conflict with the Bankruptcy Code" is insufficient to meet the standard for mandatory withdrawal.  See, e.g., Walker v. Blackstone Grp. (In re Extended Stay, Inc.), 466 B.R. 188, 196 (S.D.N.Y. 2011); In re Bd. of Dirs. of Telecom Arg. S.A., 2005 WL 3098934, at *2; California v. Enron Corp. (In re Enron Corp.), 2005 WL 1185804, at *2 (S.D.N.Y. May 18, 2005).

The Movants argue that withdrawal of the reference is mandatory in this case because "[t]he trustee's assertion of plaintiff-creditors' fraudulent conveyance claims raises substantial issues of standing under federal law."  Movant Br. at 6; see also Connolly Decl. ¶ 3 (the

adversary proceeding "requires substantial consideration of non-bankruptcy federal law, i.e., the question of whether the Trustee has standing"). The Movants also argue that they "are the owners of the fraudulent transfer claims, not the Trustee," id. at 8, and that the doctrine of in pari delicto bars the trustee from bringing these claims on behalf of Connie's, id. at 9. In opposition, NYRE Ninth argues that "the Trustee has the exclusive right to bring fraudulent conveyance claims on behalf of the estate and all creditors" and that, in any event, the Movants do not "explain how the question of the Trustee's right to bring fraudulent transfer claims requires 'substantial and material' consideration of non-bankruptcy law." NYRE Br. at 17. NYRE Ninth specifically points to 11 U.S.C. § 544(b)(1), which provides that

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

NYRE Ninth asserts that, in light of this statutory provision, "the Movants' argument that the Trustee lacks standing based on the in pari delicto defense is inapplicable here." NYRE Br. at 4. Garritano similarly argues that "[i]t is well-settled that a Bankruptcy Trustee has standing to bring [a] fraudulent conveyance action." Garritano Br. at 6.

To answer the question of whether this issue requires a significant interpretation of non-Bankruptcy law, we first examine the doctrine the Movants rely on. It is "well-settled that a trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991). Under the "Wagoner Rule," as it has come to be called, when a "bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damages to the creditors." Id.; accord

Wight v. BankAmerica Corp., 219 F.3d 79, 86 (2d Cir. 2010) (under the Wagoner Rule, a "claim against a third party for defrauding a [debtor] with the cooperation of [the debtor] accrues to the creditors, not to the guilty [debtor]") (citation omitted).  "The Wagoner rule derives from the common law doctrine of in pari delicto," Fox v. Picard (In re Madoff), 848 F. Supp. 2d 469, 483 (S.D.N.Y. 2012), aff'd sub nom In re Bernard L. Madoff Inv. Sec. LLC, 740 F.3d 81 (2d Cir. 2014), and it "bars a trustee from suing to recover for a wrong that he himself essentially took part in," Wight, 219 F.3d at 87.  However, "[t]he Wagoner rule does not . . . apply to causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in possession."  In re Madoff, 848 F. Supp. 2d at 483 (quoting In re Park South Sec., LLC, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005)).  Thus, "[n]either the Wagoner rule nor the in pari delicto doctrine apply to a trustee's statutory standing under Section 544 of the Bankruptcy Code."  Wells Fargo Bank v. First Republic Bank (In re Salander), 503 B.R. 559, 568 n. 12 (S.D.N.Y. 2013).  That is, "avoidance actions do not fall within the Wagoner rule."  Nisselson v. Empyrean Inv. Fund, L.P. (In re Marketxt Holdings Corp.), 376 B.R. 390, 423 (Bankr. S.D.N.Y. 2007) (citing cases); see also Geltzer v. Mooney (In re MacMenamin's Grill Ltd.), 450 B.R. 414, 431 (Bankr. S.D.N.Y. 2011) (trustee has "independent standing" under § 544) (citation omitted).

In this case, the Movants do not contend that the allegedly fraudulent conveyance at issue is anything other than a "transfer of an interest . . . that is voidable under applicable law" within the meaning of § 544(b)(1).  Nor do they take issue with NYRE Ninth's characterization of the claims brought by the trustee as such.  Indeed, they do not even address the applicability of § 544(b)(1) or how this statutory provision affects their mandatory withdrawal argument. Inasmuch as the resolution of the question of whether the trustee has standing to pursue the avoidance action turns on the applicability of 11 U.S.C. § 544(b)(1), the adversary proceeding

10

plainly does not involve "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." Exxon Corp., 932 F.2d at 1026. Instead, the question of whether the trustee has statutory standing under § 544(b)(1) — or whether the action is barred by the Wagoner Rule — is a question requiring the application of a bankruptcy statute. And contrary to the Movants's contention, see Connolly Decl. ¶ 2, the analysis under § 544(b)(1) is one of statutory standing under the Bankruptcy Code and does not require significant interpretation of Article III standing principles. See, e.g., In re Salander, 503 B.R. at 568 n. 12 (characterizing standing under § 544(b)(1) as "statutory" in nature); MHANY Mgmt Inc. v. Vill. of Garden City, 2013 WL 6334107, at *16 (E.D.N.Y. Dec. 6, 2013) (contrasting "statutory standing" with "constitutional standing"); Gribben v. United States (In re Gribben), 158 B.R. 920, 922 (S.D.N.Y. 1993) (finding that assignment of a debtor's cause of action to the bankruptcy trustee pursuant to a provision in the bankruptcy code concerns "statutory standing" and "does not go to the court's constitutional jurisdiction over the case").

The Movants briefly argue that the need to determine issues of collateral estoppel in the adversary proceeding warrant mandatory withdrawal of the reference. See Movant Br. at 10. They contend that Judge Kaplan "has already ruled that Ignacio Piedra, Leonor Piedra and their corporate entities are alter ego [sic] of each other," but the trustee has argued that this ruling is not entitled to preclusive effect in order to avoid application of the in pari delicto doctrine. Id. As a result, the Movants assert, "[t]he consideration of whether collateral estoppel applies to that ruling alone involves a substantial question of non-federal bankruptcy law mandating withdrawal." Id. As already noted, the in pari delicto doctrine is inapplicable in this case. But even were we to assume arguendo that it is applicable here, the issue raised by the Movants would involve only a routine application of the doctrine of collateral estoppel, not a significant

interpretation of non-Bankruptcy law.

Accordingly, the motion for mandatory withdrawal of the reference should be denied.[6]

B.  Permissive Withdrawal

28 U.S.C. § 157(d) does not define "cause" for purposes of deciding a motion seeking permissive withdrawal of the bankruptcy reference.  The Second Circuit in In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993), instructed courts adjudicating such motions to consider "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  4 F.3d at 1101 (citations omitted).  These factors — commonly referred to as the "Orion factors" — have been expressed in varying forms.  See, e.g., South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996) (district court should weigh the following factors: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors") (citations omitted).  The threshold inquiry in considering whether to withdraw the reference under Orion is "whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."  In re Orion Pictures Corp., 4 F.3d at 1101.

Since Orion was decided, however, the Supreme Court in Stern v. Marshall, 131 S. Ct. 2594 (2011), held that Article III, Section 1 the United States Constitution places certain limits

---

[6]  The Movants make detailed arguments that they are creditors of Connie's.  See Movant Br. at 11-13; Movant Reply at 11-12.  They do not explain how their status as creditors of Connie's vel non bears on their motion for mandatory withdrawal.  Accordingly, we do not address it further.

on Congress's power to assign adjudicatory powers to the bankruptcy court.  By way of background, we note that the Supreme Court long ago recognized that Article III prevents Congress from withdrawing "from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."  Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284 (1856).  Despite this structural principle, the Court has held "[a]t the same time there are matters, involving public rights . . . which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."  Id. at 284.

In Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Court concluded that Congress could not assign final adjudicative authority over a state law contract claim against an entity not involved in the bankruptcy proceeding to the bankruptcy court.  Id. at 87.  In response to Northern Pipeline, Congress enacted the Bankruptcy Amendments and Federal Judgeships Act of 1984 which, among other things, divided bankruptcy-related matters into "core" and "non-core" proceedings.  See 28 U.S.C. § 157.  As relevant here, § 157 provides that bankruptcy judges may enter final judgments in core proceedings, id. § (b)(1), and it provides a non-exhaustive list of such core proceedings, id. § (b)(2).  One of the core matters listed in § 157(b)(2) are "counterclaims by the estate against persons filing claims against the estate."  Id. § 157(b)(2)(C).

However, in Stern, the Supreme Court concluded that the bankruptcy court lacked constitutional authority to enter final judgment on a state law counterclaim that is "not resolved in the process of ruling on a creditor's proof of claim."  See Stern, 131 S. Ct. at 2620.  That is, the Supreme Court concluded that 28 U.S.C. § 157 had unconstitutionally assigned to the bankruptcy court final authority over a claim that did not fall within the "public rights" doctrine.

13

See, e.g., Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 465

(S.D.N.Y. 2011) ("[S]ome claims, while denominated 'core' under the statute, nonetheless

implicate only private rights, which cannot be finally adjudicated in a Bankruptcy Court

consistent with Article III.").

 The end result of Stern is that certain proceedings that 28 U.S.C. § 157 designates as

"core" matters may not be subject to the entry of final judgment in the bankruptcy court.  As

explained in Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd., 905 F. Supp. 2d 526,

530 (S.D.N.Y. 2012),

> the Supreme Court [in Stern] set forth three instances where a bankruptcy court
> may adjudicate finally a claim at issue: (1) if the claim involves a public right; (2)
> if the process of adjudicating the creditor's proof of claim would resolve a
> counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy
> court.

Id. (citing Stern, 131 S. Ct at 2608, 2614, 2617); accord Weisfelner v. Blavatnik (In re Lyondell

Chemical Co.), 467 B.R. 712, 720 (S.D.N.Y. 2012) (bankruptcy court "lacks final adjudicative

authority over a core claim" where the claim "did not fall within the public rights

exception . . . would not necessarily be resolved in ruling on a creditor's proof of claim . . . and

[t]he parties did not unanimously consent to final adjudication by a non-Article III tribunal")

(internal citations omitted).

 In light of Stern, "the majority of courts in this Circuit have determined that the primary

Orion factor – whether or not a proceeding is core or non-core – has been supplanted by a

determination of whether the bankruptcy court may finally determine a proceeding or whether

the bankruptcy court's proposals must be reviewed de novo by a district court . . . . "  Sec. Inv.

Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff), 486 B.R. 579, 582

n. 1 (S.D.N.Y. 2013) (citations omitted).  Thus, after Stern, most courts hold that "the first

inquiry is whether the bankruptcy court has final adjudicative authority over the claim . . . . "

Dynegy, 905 F. Supp. 2d at 530; accord In re Lyondell Chemical Co., 467 B.R. at 719; Dev.

Specialists, Inc., 462 B.R. at 467.  Thus, in resolving the motion for permissive withdrawal, we

will first address whether the bankruptcy court has final adjudicative authority over the

adversary proceeding under Stern before discussing the relevant Orion factors.

      1.  The Bankruptcy Court's Final Adjudicative Authority Over the Adversary
           Proceeding

      The Supreme Court has held that fraudulent conveyance actions brought by a bankruptcy

trustee against a person who had not submitted a claim against the bankruptcy estate

> are quintessentially suits at common law that more nearly resemble state-law
> contract claims brought by a bankrupt corporation to augment the bankruptcy
> estate than they do creditors' hierarchically ordered claims to a pro rata share of
> the bankruptcy res.

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56 (1989).  In Stern, the Supreme Court relied on

this language in finding that the state law counterclaim at issue in that case could not be

adjudicated by the bankruptcy court, stating that the debtor's "counterclaim — like the

fraudulent conveyance claim at issue in Granfinanciera — does not fall within any of the

varied formulations of the public rights exception in this Court's cases."  Stern, 131 S. Ct. at

2614.  "Under both Stern and Granfinanciera, then, it is axiomatic that a fraudulent conveyance

claim against a person who has not submitted a claim against a bankruptcy estate, brought solely

to augment the bankruptcy estate, is a matter of private right" that cannot be finally determined

by the bankruptcy court.  In re Lyondell Chemical Co., 467 B.R. at 720.  The fraudulent

conveyance action in this case names NYRE Ninth and Garritano as defendants, and no party has

suggested that they have filed proofs of claim against the estate.  In light of Granfinanciera and

Stern, "there is an emerging consensus in this District that the Bankruptcy Court may not

15

ordinarily enter final judgment on avoidance claims." In re Big Apple Volkswagon, LLC, 2013 WL 1245548, at *4 (citations and quotation marks omitted).

The second Stern exception appears to be inapplicable here as well, as it appears neither NYRE Ninth nor Garritano have filed proofs of claim against the Connie's estate. The applicability of last Stern exception (whether the parties to the adversary proceeding have consented to final adjudication of this action by the bankruptcy court) has not been briefed by the parties. Accordingly, we will assume there has been no such consent. We are prepared to make this assumption — as well as the broader assumption that the bankruptcy court lacks constitutional authority to finally resolve the claim — because a contrary conclusion would have no effect on our determination, explained further below, that permissive withdrawal is not warranted.

Finally, we note that Stern does not affect the bankruptcy court's constitutional authority to resolve the adversary proceeding pursuant to Bankruptcy Rule 9019. See, e.g., Police & Fire Ret. Sys. of Detroit v. Ambac Fin. Grp., Inc. (In re Ambac Fin. Grp., Inc.), 2011 WL 6844533, at *7 (S.D.N.Y. Dec. 29, 2011) ("[I]t is clear that [Stern] does not implicate the approval of settlements, relating to property of the debtor's estate, under Rule 9019. It suffices to note that there is a fundamental difference between a court's entry of a final, binding judgment on the merits of a claim and its approval of a settlement of that claim . . . Thus, there was no constitutional infirmity in the bankruptcy court's issuance of the 9019 Order.") (internal citations omitted). Accordingly, while we have assumed that the bankruptcy court lacks constitutional authority to resolve the trustee's fraudulent conveyance action on the merits, this factor would not weigh in favor of permissive withdrawal of the Rule 9019 motion.

2.  Considerations of Judicial Efficiency

The mere fact that the bankruptcy court may lack authority to ultimately resolve the adversary proceeding does not mean that there is no value in the bankruptcy court hearing the claim.  As one court has noted, "[a]lthough the Bankruptcy Court lacks constitutional authority to enter a final decision [in an avoidance action], it may still hear the case in the first instance and recommend proposed findings of fact and conclusions of law."  In re Big Apple Volkswagon, LLC, 2013 WL 1245548, at *5 (quoting Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff Securities), 490 B.R. 46, 56 (S.D.N.Y. 2013)).  Indeed, "[m]ultiple courts in this District have already concluded that, although Stern prevents the Bankruptcy Court from entering final judgment on avoidance claims, considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law."  In re Madoff Securities, 490 B.R. at 58 (citing cases).  Even where the bankruptcy court will have to "issue a report and recommendation rather than a final judgment[,] . . . experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time."  Kirschner v. Agoglia, 476 B.R. 75, 83 (S.D.N.Y. 2012).  Likewise, "in cases where the bankruptcy court is more familiar with the record or already has extensive experience in the matter, it may be most efficient for the bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo."  Dynegy Danskammer, 905 F. Supp. 2d at 533 (citing cases); accord In re Madoff Securities, 490 B.R. at 58 (commenting on the efficiency realized by "receiving the recommendation of a court that possesses both intimate familiarity with the underlying liquidation and substantial expertise in the bankruptcy law that applies to these avoidance claims").  A Standing Order of the Southern

17

District of New York explicitly permits this procedure.  See In re Standing Order, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012); see also Lehman Bros. Holdings Inc. v. JP Morgan Chase Bank, N.A. (In re Lehman Bros Holdings Inc.), 480 B.R. 179, 193-94 (2012) (bankruptcy court has the authority "to issue a report and recommendation as to those claims for which it otherwise lacks the constitutional authority to enter final judgment") (citing cases).

In this case, judicial efficiency will be promoted by denying the motion to withdraw the reference.  The adversary proceeding pending in the bankruptcy court is nearly two years old. That court has supervised discovery, has held numerous hearings, and has pending before it cross-motions for summary judgment.  See, e.g., NYRE Br. at 15.  Also pending is the trustee's motion to approve a settlement of the avoidance action under Bankruptcy Rule 9019, a motion which appears best left to resolution in the bankruptcy court given its familiarity with the Connie's bankruptcy and with the adversary proceeding.  Under these circumstances, withdrawing the reference would serve only to reduce efficiency.  See, e.g., Pryor v. Tromba, 2014 WL 1355623, at *7 (E.D.N.Y. April 7, 2014) ("[T]he Bankruptcy Court has administered the adversary proceeding for approximately over two years, overseen discovery, held hearings, has the motions for summary judgment before it, and is more intimately familiar with the facts, circumstances, and legal issues surrounding the Debtor's bankruptcy case and the adversary proceeding."); In re Big Apple Volkswagon, LLC, 2013 WL 1245548, at *6 ("The Bankruptcy Court is familiar with the bankruptcy estate as a whole, having overseen its administration [for roughly two years]."); In re Lyondell Chemical Co., 467 B.R. at 724 ("Given the extensive experience the bankruptcy court has acquired in this matter, permitting it to rule on the pending motions and to conduct pre-trial proceedings will be of assistance to this Court and to the parties."); In re Extended Stay, Inc., 466 B.R. at 206 ("The bankruptcy court has been

18

administering the . . . bankruptcy for over two years.  Judicial economy would be promoted by allowing the bankruptcy court, already familiar with the extensive record in this case, to initially adjudicate these cases."); Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assoc., LLC), 474 B.R. 430, 440 (S.D.N.Y. 2012) ("[D]iscovery is now complete and a motion for summary judgment is pending . . . [T]hat court is familiar with the facts of the case and has issued rulings.  It is more efficient to allow the Bankruptcy Court to provide recommendations on findings of fact and conclusions of law than for this Court to begin anew.").

The Movants' argument that withdrawal is warranted because the case pending in the bankruptcy court and the employment cases pending in this Court "involve[] common issues of law and fact," Movant Br. at 18, is not persuasive.  Movants cite a "risk of inconsistent results on factual and legal issues presented in both actions," but this line of argument rests on a mistaken premise: that there are any common issues of law and fact between the adversary proceeding and the two employment cases.  As NYRE Ninth points out, the employment cases "deal with entirely different . . . issues stemming from alleged wage-related and discrimination claims" and do "not involve claims seeking to recover fraudulent transfers."  NYRE Br. at 31.  As a result, judicial efficiency concerns strongly militate against granting the withdrawal motion.

### 3.  Relevance of the Right to a Jury Trial

"Whether a dispute is legal or equitable in nature and consequently whether the litigants are afforded the right to a jury trial is another consideration in determining whether the reference should be withdrawn."  In re Extended Stay, Inc., 466 B.R. at 197 (citation omitted).  The Movants assert that they have "demanded a jury trial on their claims and have not consented to trial before the bankruptcy court."  Movant Br. at 17.  But the question of whether they have "consented to trial" before the bankruptcy court is irrelevant as they are not even parties to the

adversary proceeding.  Moreover, because the ruling on the trustee's motion under Bankruptcy

Rule 9019 has not yet been made, the adversary proceeding may never proceed to trial.  And

even if the Movants had the right to a jury trial in the adversary proceeding, case law holds that

their motion need not be granted at this time.  "Withdrawal of the reference based on a demand

for a jury trial is not required or appropriate . . . if the demand for a jury trial is not valid or it is

premature."  Pryor, 2014 WL 1355623, at *8 (citations omitted).  Thus, a "motion for

withdrawal of the reference will not be granted simply because of a party's demand for a jury

trial without consideration of how far the litigation has progressed because such decision would

run counter to the court's interest in judicial economy."  In re Big Apple Volkswagon, LLC,

2013 WL 1245548, at *6 (citation and alterations omitted).  Given this concern for judicial

efficiency, courts in this District generally deny withdrawal motions where a case is not yet

ready for trial.  See, e.g., In re Extended Stay, Inc., 466 B.R. at 198 ("[P]ermissive withdrawal to

take the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will

become a question ripe for determination if and when the case becomes trial ready.") (quoting

O'Connell v. Terranova, 112 B.R. 534, 538 (S.D.N.Y. 1990) (quotation marks omitted));

Kirschner, 476 B.R. at 83 ("[W]hile Movants cite to their jury demand as a reason to withdraw

the reference now, the Court may withdraw the reference if and when a trial is necessary."); see

also Murphy v. Cnty. of Chemung (In re Murphy), 482 F. App'x 624, 628 (2d Cir. 2012) ("The

mere presence of a jury demand in a case does not mandate withdrawal of the reference, as a

district court . . .  might decide that a case is unlikely to reach trial, that it will require protracted

discovery and court oversight before trial, or that the jury demand is without merit, and therefore

might conclude that the case at that time is best left in the bankruptcy court.") (citation and

internal quotations omitted).  Thus, any potential jury trial rights held by the Movants do not yet

support withdrawal.

         4.   <u>Prevention of Forum Shopping and Promotion of Uniform Application of Bankruptcy Laws</u>

The fact that the Movants' request to withdraw the reference has been presented before the bankruptcy court has decided the motion for intervention or the Rule 9019 motion warrants the inference that they brought the motion based on a fear of an unfavorable determination in that forum. Indeed, their papers are replete with expressions of their dissatisfaction with the course of proceedings in the bankruptcy court, especially with the trustee's chosen course of action in the adversary proceeding. <u>See</u>, <u>e.g.</u>, Movant Br. at 2, 4, 20; Movant Reply at 3,7; Connolly Decl. ¶¶ 2, 12, 28, 37, 43-46. These concerns are irrelevant to a withdrawal motion, however, and withdrawing the reference on these bases would only promote forum shopping. <u>See</u>, <u>e.g.</u>, <u>In re Global Aviation Holdings, Inc.</u>, 496 B.R. 284, 290 (E.D.N.Y. 2013) ("The policy of avoiding forum shopping weighs in favor of keeping the claim in bankruptcy court."). Similarly, the uniform application of bankruptcy law will be promoted by keeping the case in the bankruptcy court inasmuch as issues concerning the Movants' status as creditors of Connie's, their ability to intervene in the adversary proceeding, and the fairness of the proposed settlement are all issues lying at the heart of the bankruptcy court's competency. <u>Cf.</u> <u>In re Enron Corp.</u>, 2005 WL 1185804, at *3 (uniform application factor militated against withdrawal where "[t]he Bankruptcy Court [was] more thoroughly familiar with the Debtors [sic] claims and issues in the instant matter . . . Thus, the Bankruptcy Court [was] in a better position to adjudicate them . . . . ").

         5.   <u>Weighing the Factors</u>

Although we have assumed <u>arguendo</u> that the bankruptcy court lacks constitutional

authority to enter a final judgment on the trustee's avoidance action, none of the other Orion factors support withdrawal.  "[P]ermissive withdrawal of the reference may not be warranted if considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law." In re Big Apple Volkswagon, LLC, 2013 WL 1245548, at *5 (citation omitted); accord In re Lyondell Chemical Co., 467 B.R. at 723 ("The bankruptcy court's authority to enter final judgment on claims is not determinative in deciding whether to withdraw the reference . . . . ").  While we recognize that the "issues raised by Stern might slow the adversary proceedings somewhat," we find that "this concern does not justify permissive withdrawal in light of all the other considerations weighing against withdrawal." In re Extended Stay, Inc., 466 B.R. at 207; In re Global Aviation Holdings Inc., 496 B.R. at 289 ("[T]he bankruptcy court not only has administered the estate for nearly one and a half years, it also has initiated related discovery proceedings.  Its extensive experience with the case weighs heavily in favor of denying the motion.").  Thus, permissive withdrawal of the reference is unwarranted.  See generally Pryor, 2014 WL 1355623, at *8 (denying withdrawal motion where Article III prevented entry of final judgment in bankruptcy court but remaining Orion factors weighed against permissive withdrawal).

## IV.  CONCLUSION

For the foregoing reasons, the motion to withdraw the reference should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Kaplan.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 8, 2014
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

23